Statement of the Case.
MONROE, J.
Plaintiffs seek to obtain judgment against defendants for $4,000, as the value of 80 bales of cotton, which, they allege, were raised by Jules Jacobs on Shady Grove plantation in 1907, and sold and shipped by him to defendants, in violation, to the knowledge, or presumed knowledge, of defendants, of a crop lien and pledge contract; duly recorded, whereby Jacobs had pledged the entire crop of cotton, so raised, and had bound himself to ship the same to plaintiffs. The contract mentioned is annexed to the petition, and contains, among others, the following recitals, to wit:
That Jacobs is engaged in cultivating Shady Grove plantation, and, in order to raise crops thereon, during the year 1907, wishes to obtain advances, in money and supplies, from plaintiffs, and to secure the same by pledge of the crops; that plaintiffs agree to advance him $15,000, for which he has given his note for $15,785.99, which has been discounted; that Jacobs shall be entitled to draw the proceeds only for the cultivation of the plantation and the making and marketing of the crops, and that he pledges the crops to secure said advances, and any other, up to $100,000; that he also pledges his note for $10,000, dated May 6, 1906, and identified with an act of mortgage of date May 11, 1906; that he agrees to ship the entire crop of cotton raised by him on said plantation, and other cotton that he may control, to plaintiffs or their order. And there are other stipulations which need not be recited. The facts of the case, as disclosed by the evidence, are as follows:
Mr. Jacobs had been engaged in business for a number of years as a general country merchant at Rosedale, in Iberville parish, and there was included in his business the buying and selling of cotton, and the advancing of money and supplies for the raising and marketing of that staple. It does not appear that he himself ever planted cotton for his own account. As early, perhaps, as 1904 he entered into relations with plaintiffs, who extended to him a credit for the purposes of the business in which he was engaged, and of the character of which they were fully advised, and, by the end of the year 1905, he appears to have owed them a balance of $7,000, for which (by way of collatéral, as we infer) they held his note for $10,000, secured (nominally) by a third mortgage on Shady Grove plantation. The contract set out in the petition and the note (for $15,785.99) therein referred to were executed on March 22, 1907, and the note was given to cover the past-due balance of $7,000, with interest, and $8,000 additional, which plaintiffs agreed to ad *625 vanee; hence the transfer of the $10,000 note as collateral. Shady Grove plantation was rented out to tenants at from $5 to $6 an acre cash, with the exception of one tenant, who planted on shares. Mr. Jacobs, however, advanced the money and supplies required by the tenants for the raising of their cotton, and, when the cotton was harvested, it was delivered to him, and he received it in payment, or in part payment, of the rents due him, and of his bill for advances, or, if the value of the cotton exceeded the amount due by the tenant, he paid the difference in cash. It is not asserted that plaintiffs made any advances to, or had any business relations whatever with, the people by whom the cotton in question was raised, and it is not denied that such advances as were made were made by Jacobs.
According to his testimony, which is uneontradicted, he shipped 120 bales of cotton as directed by plaintiffs, and he then wrote to defendants, who were strangers to him, and made them offers, which resulted in their buying from him, say, 100 bales, of which less than 40 are shown to have been produced on Shady Grove plantation; and he explains why he did so as follows:
“Q. In selling your cotton to defendants, was it your purpose to divert it from its regular channel, and to defraud plaintiffs, or was it because plaintiffs had failed, and you were obliged to resort to that method to keep your business alive? Did you not so declare to Dr. Haas on the occasion of his meeting you at Maringouin, as stated in cross-interrogatory No. 8, and did you not write to plaintiffs that, unless they carried out their contract with you, you would have to use the cotton which you had contracted to ship to them in keeping up your business as you did? As a matter of fact had you not so used your cotton, could you have kept up your business as you did? A. I had to sell the cotton to buy the things and get provisions to keep the business and plantations going, which I could not get from plaintiffs, at that time; several of the checks that I had drawn on them on account of this cotton having been returned to me, unpaid, on account of their going into the hands of a receiver. Yes, sir; yes, sir. I could not have kept up my business if I did not sell otherwise than as provided in the contract.”
There was judgment in the district court in favor of defendants, and plaintiffs have appealed.
Opinion.
[1, 2] Plaintiffs’ counsel quote Act 66 of 1874 as supporting the proposition that:
“Plaintiffs did all that was necessary to give them a pledge and pawn of Jacobs’ crop. Jacobs signed a crop lien, which was duly recorded in the parish of Iberville, where Shady Grove plantation is situated, and advances were made to Jacobs under the said crop lien.”
The act quoted reads in part:
“That, in addition to the privilege now conferred by law, any planter or farmer may pledge or pawn his growing crop of cotton, sugar or other agricultural products, for advances in money, goods and necessary supplies that he may require for the production of the same, by entering into a written agreement to pledge the same and having the agreement recorded, * * * which recorded .contract shall give and confer on the merchant or other person advancing money, goods and necessary supplies * * * a right of pledge upon said crop,” etc.
The answer to the proposition is that Mr. Jacobs was uot the planter or fanner who produced the cotton here in question; that he was the merchant who made the advances, and who, if he complied with the Act of 1874, was entitled to the rights thereby accorded to such merchant; that he had no mandate from those who did produce the cotton to pledge or pawn it for money obtained by him under a contract to which they were not parties, and of the terms of which they were ignorant; and that no right of pledge or pawn exists or can be-created by a contract, such as that sued on, in favor of a merchant who lends his money to another, in order that the latter may lend or advance it to a planter or farmer for the making of a crop. The act quoted has, therefore, no application to the case. ;
And the same thing may be said of article 3217 of the Civil Code, which creates a privilege in favor of—
“debts due for necessary supplies furnished to any farm or plantation, and * * * for mon *627 ey actually advanced and used for the purchase of necessary supplies and the payment of necessary expenses for any farm or plantation, on the crops of the year and the proceeds thereof.”
It is undeniable that Jacobs, by whom the advances were made, was entitled to the privilege accorded by the above-quoted article, and the evidence shows that his privilege was satisfied. If, however, the cotton remained subject to a privilege in favor of plaintiffs, for the money advanced by them to Jacobs, it might still have been seized in satisfaction of such privilege, and the owner could thereby have been compelled to pay twice for the same thing, and the second time by virtue of a contract to which he was not a party.
Judgment affirmed.
PROVOSTX, J., being absent on account of illness, takes no part.